```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                              :
PEDRO CRUZ,                                   :
                                              :    07 Civ. 9868 (RJH) (DF)
                         Petitioner,          :
                                              :    **REPORT AND**
       -against-                              :    **RECOMMENDATION**
                                              :
ROBERT ERCOLE,                                :
                                              :
                         Respondent.          :
---------------------------------------------------------X
```

**TO THE HONORABLE RICHARD J. HOLWELL, U.S.D.J.:**

## INTRODUCTION

*Pro se* petitioner Pedro Cruz ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2005 conviction in the New York State Supreme Court, New York County. (Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus by a Person in State Custody, dated Oct. 9, 2007 ("Petition") (Dkt. 2).) Upon a jury verdict, Petitioner was convicted of robbery in the second degree and was sentenced as a persistent violent felony offender to an indeterminate prison term of 18 years to life. Petitioner is currently incarcerated at the Eastern New York Correctional Facility in Napanoch, New York. (*See* Dkt. 9.) For the reasons set forth below, I recommend that the petition be dismissed.

## BACKGROUND

### A.  The Trial

Petitioner's trial was conducted on May 18, 21, and 22, 2005, before the Honorable Carol Berkman, J.S.C. According to the testimony presented by the prosecution, Petitioner and an accomplice robbed a Manhattan convenience store on July 1, 2003. At the time of the robbery, Ziaur Rahman ("Rahman") was working alone behind the counter. The trial testimony revealed

that Petitioner's accomplice forced Rahman to the rear of the store and then cornered him, threatened him, and took money from him, while Petitioner went behind the counter and stole cash and cigarettes. Petitioner and his accomplice then released Rahman and exited the store, at which point they were observed by a man who was just entering the store, Hannibal Hosang ("Hosang").

At trial, the prosecution called as witnesses Rahman, Hosang, and three members of the New York City Police Department: Officer Yolanda Williams ("Williams"), Detective Josephine Lalli ("Lalli"), and Detective Arthur Connolly ("Connolly"). Petitioner did not testify at trial, nor did he call any witnesses or present other evidence on his own behalf. Summarized in greater detail, the evidence adduced by the prosecution at trial was as follows:

1. **The Robbery**

On July 1, 2003, Rahman was working by himself as a clerk at a convenience store located at 2350 Broadway in Manhattan. (Tr., at 15-16, 19-20.)[1] At approximately 3:00 p.m., a man wearing a red shirt – who was identified at trial as Petitioner (*id*. at 57) – entered the store and began to look at magazines (*id*. at 19-20). Moments later, another customer who had been in the store exited, leaving Rahman and Petitioner alone. (*Id*. at 21.) Petitioner then proceeded to the front of the store, where he stood waiting by the entrance until another man entered. (*Id*.) The second man approached Rahman, who was behind the counter at the time, and said,

---

[1] The state-court transcript relevant to Petitioner's conviction and sentencing (Dkt. 8) is divided into four parts. The first part is a transcript of proceedings held on March 1, 2005, and involves various pretrial matters. The second part, dated March 17, 2005, includes the *voir dire* minutes. Relevant here are the third and fourth parts; the third part (referred to herein as "Tr."), dated March 18, 21, and 22, 2005, includes opening statements, trial testimony, summations, the jury charge, and the verdict, while the fourth part (referred to herein as "Sentencing Tr."), dated April 20, 2005, includes Petitioner's sentencing.

"I would like to show you something." (*Id*. at 22.) Thinking that the man was peddling stolen goods, Rahman responded, "I don't need anything[;] you can leave." (*Id*.) Rather than leave, the second man came around to the side of the counter, grabbed Rahman, forced him toward the back of the store, and pinned him against a freezer. (*See id*. at 22-26.) While being held in the rear of the store, Rahman noticed that Petitioner had made his way behind the counter. (*Id*. at 26-27.) Petitioner's accomplice then threatened Rahman and stole approximately $300 from his person. (*Id*. at 25, 27.) The incident went on for three to four minutes, but ended when Rahman was released and both robbers left the store. (*Id*. at 28-29.)

Meanwhile, Hosang was approaching the entrance to the store from the outside. (*Id*. at 55; *see also id*. at 29.) Upon reaching the door, Hosang was "shoved a little bit" by a man in a red shirt who was exiting the store carrying cartons of cigarettes. (*Id*. at 55-56.) When Hosang made his way inside, Rahman told Hosang that he had just been robbed. (*Id*. at 29, 56.) Both Rahman and Hosang looked out the window and saw Petitioner jump into the passenger side of a car, which immediately sped off. (*Id*. at 29-30, 56-57.) Rahman then called the police and examined the inside of his store. (*Id*. at 30-31.) He noticed that cigarette cartons, which he had stored below the counter, had been "displaced" – some were on the floor; others were on the counter. (*Id*.) He also noticed that the "lotto cash register" had fallen on the floor (*id*. at 28), another register was open (*id*. at 30), and approximately $12,000 was missing from various locations behind the counter (*id*. at 31). Although, at trial, and during a July 18, 2003, photo line-up, Rahman was unable to identify Petitioner as having been involved in the robbery (*id*. at 48, 158-59), Hosang identified Petitioner as the man he had seen exiting the store, wearing a red shirt, and carrying cartons of cigarettes (i*d*. at 57).

## 2. The Police Investigation

After the robbery, Williams arrived at the store to investigate the crime scene. (*Id*. at 72-73.) Another officer had arrived before her, but that officer's role appears to have been limited to "safeguarding" the scene. (*Id*. at 73.) While taking photographs of the inside of the store, Williams noticed that a cash register drawer was lying on the floor and several cigarette cartons were on the counter. (*Id*. at 73-77, 84-85.) After taking photographs, Williams dusted the counter area for latent fingerprints. (*Id*. at 77.) She was able to find 15 separate prints, many of which were on the cigarette cartons on and behind the counter. (*Id*. at 77-84; *see also* 116.) Williams lifted the prints onto fingerprint cards and forwarded them in a sealed envelope to the Manhattan Latent Fingerprint Section. (*Id*. at 83-84.)

Sometime in July, 2003, Connolly, a latent print examiner with the New York Police Department, examined the latent fingerprints that Williams had prepared. (*Id*. at 98, 109-12, 117.) Connolly was able to match several of the prints with those of Petitioner, whose fingerprints were apparently in the Police Department's database at that time. (*See id*. at 114-17, 123.) On September 9, 2004, Lalli arrested Petitioner and took his fingerprints during processing. (*Id*. at 94.) Connolly subsequently compared the latent prints prepared by Williams to those taken from Petitioner in September, 2004, and concluded that they matched, as well. (*Id*. at 117-18.)

At trial, Lalli identified photographs taken on July 17, 2003, that depicted Petitioner wearing a red shirt. (*Id*. at 95-96.) Hosang viewed the pictures at trial and identified the shirt as the one that he had seen Petitioner wearing on the day of the robbery. (*Id*. at 57-58.)

**B.      Verdict and Sentence**

On March 22, 2005, the jury found Petitioner guilty of robbery in the second degree. (*Id*. at 222-23.)  After the jury returned its verdict, the court acknowledged that the prosecution had filed a mandatory persistent violent felony offender statement, alleging that, on January 6, 1987, Petitioner had been convicted of robbery in the first degree, and that, on July 13, 1992, he had been convicted of attempted robbery in the second degree. (*Id*. at 225-26.)  Petitioner admitted on the record that he had been convicted of those crimes and that he had been incarcerated from April 20, 1987, to December 1, 1988, and from July 24, 1992, to April 1, 1998. (*Id*. at 226.)

Petitioner was sentenced on April 20, 2005. (Sentencing Tr., at 1.)  The sentencing court adjudicated Petitioner a persistent violent felony offender under New York law and imposed an enhanced sentence of 18 years to life. (*Id*. at 2-3, 7.)

**C.      Direct Appeal**

On direct appeal, Petitioner claimed that (1) the guilty verdict "was against the weight of the evidence, thus depriving [Petitioner] of due process"; (2) his sentence of 18 years to life was excessive; and (3) his adjudication as a persistent violent felony offender was unconstitutional under the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Declaration of Priscilla Steward in Opposition to the Petition, dated May 23, 2008 ("Steward Decl.") (Dkt. 7) Ex. A (Petitioner's Brief to the Appellate Division, dated June 9, 2006, at 14-36).)

On February 8, 2007, the Appellate Division affirmed Petitioner's conviction. *People v. Cruz*, 829 N.Y.S.2d 486 (1st Dep't 2007).  The court held that Petitioner's guilty verdict was not against the weight of the evidence, as the People had presented both identification and fingerprint evidence. *Id*. at 487.  The court summarily rejected Petitioner's excessive sentence

claim and further held that his *Apprendi* claim failed under *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). *See Cruz*, 829 N.Y.S.2d at 487.

Thereafter, Petitioner submitted an application for leave to appeal to the New York Court of Appeals, asking that court to consider all of the claims he had raised before the Appellate Division. (Steward Decl. Ex. D (Letter to New York Court of Appeals, from Petitioner, dated March 1, 2007).) The Court of Appeals denied Petitioner's leave application on May 1, 2007. *People v. Cruz*, 8 N.Y.3d 983 (2007).

### D.  **Habeas Petition**

Proceeding *pro se*, Petitioner filed his federal habeas petition on October 9, 2007.[2] (*See* Petition.) Attached to the Petition is a copy of the table of contents of the brief Petitioner submitted to the Appellate Division, and this Court thus construes the Petition as challenging Petitioner's incarceration on the same grounds that Petitioner raised on direct appeal.[3]

On May 25, 2008, Respondent opposed the Petition by filing a memorandum of law in opposition to the Petition (Respondent's Memorandum of Law In Opposition to Petition for a Writ of Habeas Corpus, dated May 23, 2008 (Dkt. 6)), the Steward Declaration, and the transcript of Petitioner's pre-trial proceedings, trial, and sentencing.

---

[2] Although the Court's docket reflects a filing date of November 7, 2007, a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), and this Court will therefore deem the Petition to have been filed on October 9, 2007, the date when Petitioner declared under penalty of perjury that he delivered the petition to prison authorities to be mailed to the Court, *see, e.g.*, *Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 2000).

[3] On December 8, 2009, Petitioner moved to stay these habeas proceedings, so as to allow him to exhaust an additional claim in the state courts. (Dkt. 10.) By separate Order of today's date, this Court has denied that motion.

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

  A. <u>**Statute of Limitations**</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] the time to seek direct review via certiorari").

In this case, Petitioner's claims are timely. The New York Court of Appeals denied leave to appeal on May 1, 2007, *Cruz*, 8 N.Y.3d 983, and Petitioner's conviction thus became final 90 days later, on July 30, 2007, the date on which his time to seek a writ of certiorari to the United States Supreme Court expired. *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001). Petitioner filed the Petition in this Court on October 9, 2007, within one year of that date, and thus within the limitations period.

  B. <u>**Exhaustion**</u>

A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). To satisfy the

7

exhaustion requirement, a habeas petitioner must have "fairly presented" his federal claims to the state courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged violations of . . . [the] prisoners' federal rights." *Picard*, 404 U.S. at 275 (citation omitted).

The standards for presenting federal constitutional claims to state courts are not so stringent as to require the recitation of "book and verse on the federal constitution." *Id.* at 278 (citation omitted). The state courts, however, must be "apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.'" *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)) (alteration in original). Petitioners can ensure that state courts are "alerted to the fact that [they] are asserting claims under the United States Constitution," *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), by presenting their claims in a fashion demonstrating either

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) [an] assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [an] allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194; *accord Jackson v. Edwards*, 404 F.3d 612, 618-19 (2d Cir. 2005); *see also Petrucelli v. Coombe*, 735 F.2d 684, 688 (2d Cir. 1984). Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented to "the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citing *Pesina v. Johnson*, 913 F.3d 53, 54 (2d Cir. 1990)), *cert. denied*, 514 U.S. 1054 (1995).

C.  **Standard of Review**

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground"). The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision" and arrives at a different result.[4] *Williams*, 529 U.S. at 405-06. An

---

[4] The Supreme Court has emphasized that "clearly established Federal law" refers only to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of the

9

"unreasonable application" of clearly established federal law occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409). Where the state court has not reached the merits of a petitioner's claim, then this Court will consider the claim under a *de novo* standard of review.

## II. PETITIONER'S CLAIMS

### A. Weight of the Evidence

In his first habeas claim, Petitioner asserts that the jury's verdict was against the weight of the evidence. Although Petitioner cites to the United States Constitution and federal case law in connection with this claim, a true "weight of the evidence" claim cannot be maintained in a federal habeas proceeding, because such a claim is grounded entirely in state law and does not implicate any federal constitutional right. *See People v. Bleakley*, 69 N.Y.2d 490, 492-95 (1987) (noting that review of the "weight of the evidence" is the "exclusive statutory authority" of the New York Appellate Division); *see also, e.g., Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) ("A federal habeas court cannot address 'weight of the evidence' claims

---

relevant state-court decision.'" *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)); *see also Rodriguez v. Miller*, 499 F.3d 136, 140 (2d Cir. 2007) ("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions."). Thus, a principle of constitutional law "grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot provide the basis for habeas relief. *Id.* (citing *Musladin*).

because . . . the 'weight of the evidence' argument is a pure state law claim . . . for which habeas review is not available." (internal citations omitted)).

Nonetheless, given Petitioner's references to federal law and the requirement that *pro se* pleadings be construed liberally,[5] the Court will construe Petitioner's claim as also challenging the legal sufficiency of the evidence. A "sufficiency of the evidence" claim, unlike a "weight of the evidence" claim, is grounded in the Due Process Clause of the 14th Amendment, which prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 364 (1970).

On this type of claim, however, a petitioner "bears a heavy burden because the government receives the benefit of having all permissible inferences drawn in its favor." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (internal quotation and citation omitted). Habeas relief is warranted only if the Court finds that, when viewing the evidence most favorably to the prosecution, no rational jury could find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, (1979); *see also Farrington v. Senkowski*, 214 F.3d 237, 240-41 (2d Cir. 2000) (citing *Jackson*, 443 U.S. at 324). Such an inquiry "does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 318-19 (quoting *Woodby v. Immigration & Naturalization Serv.*, 385 U.S.

---

[5] The submissions of a *pro se* petitioner should be held to a "'less stringent standard[] than formal pleadings drafted by lawyers,'"*Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (quoting *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)), and the Court should read such submissions "liberally and interpret them to raise the strongest arguments they suggest," *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

276, 282 (1966)). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.

Here, regardless of whether Petitioner exhausted a federal "sufficiency of the evidence" claim by fairly presenting such a claim to the state courts, any such claim would, in any event, be subject to dismissal by this Court on the merits, even under a *de novo* standard of review.[6] *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Under New York law, a person is guilty of robbery in the second degree when he (1) forcibly steals property and (2) is aided by another person actually present. N.Y. Penal Law § 160.10. Further, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." *Id*. § 20.00. In this case, the trial record contains sufficient evidence to support each of the elements of the crime at issue.

In particular, the record establishes that, on July 1, 2003, two men entered Rahman's store and, acting in concert, threatened Rahman, cornered him in the rear of the store, and stole cigarettes and cash from the store, and cash from Rahman. (Tr., at 15-32, 55-56.) Rahman

---

[6] It appears that the Appellate Division construed this claim only as a state-law "weight of the evidence claim." *See Cruz*, 829 N.Y.S.2d at 487. Therefore, to the extent Petitioner did raise a "sufficiency of the evidence" claim on direct appeal, the Appellate Division did not decide it on the merits, and any review by this Court should be *de novo*. *See Hoover v. Giambruno*, No. CV-04-659 (FB), 2006 U.S. Dist. LEXIS 5613, at *19 (E.D.N.Y. Jan. 18, 2006) (citing *Shih Wei Su v. Filion*, 335 F.3d 119, 126 & n.3 (2d Cir. 2003)).

testified that one of the robbers had worn a red shirt (*id*. at 19-20), and Hosang, who arrived at the scene as the robbers were fleeing, identified Petitioner as the man he had seen running from the store, wearing a red shirt, and carrying cartons of cigarettes (*id*. at 55-57). Moreover, Connolly testified that Petitioner's fingerprints matched several fingerprints that had been recovered from boxes of cigarettes left at the crime scene. (*Id*. 114-18, 121, 123.)

To the extent Petitioner is arguing that his guilt was in "doubt" because certain of the prosecution's evidence was implausible or inconsistent (*see* Steward Decl. Ex. A, at 14-22 (noting, for example, that Hosang testified that Petitioner's skin color was light brown, while Rahman testified that the perpetrator was black, and that Hosang testified that Petitioner was 6'2" to 6'3" tall, but the prosecution stipulated that Petitioner was only 5'11"), his arguments essentially turn on questions of witness credibility. Yet the fact that the jury chose to credit the testimony of certain of the prosecution's witnesses or resolved inconsistencies in the prosecution's favor does not undermine the reliability of the jury's verdict. *See Bossett,* 41 F.3d at 830 ("the jury is exclusively responsible for determining a witness' credibility" (citing *United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993)). "The role of this Court is clear: 'federal habeas courts are not free to reassess the factspecific to credibility judgments by juries or to weigh conflicting testimony. On collateral review, this Court must presume that the jury resolved any questions of credibility in favor of the prosecution.'" *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, No. Civ. 92-1007 (CPS), 1992 U.S. Dist. LEXIS 13483, at *8 (E.D.N.Y. Sept. 2, 1992)).

Further, "'the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction,'" *Edwards v. Jones*, 720 F.2d 751, 755 (2d Cir. 1983) (quoting

*United States v. Danzey*, 594 F.2d 905, 916 (2d Cir. 1979)), and, here, Hosang not only identified Petitioner as one of the robbers, but his identification of Petitioner was corroborated by fingerprint evidence.

Viewing all of the evidence in the light most favorable to the prosecution, a rational jury certainly could have found, beyond a reasonable doubt, all of the elements of robbery in the second degree, and I therefore recommend that Petitioner's first habeas claim be dismissed.

### B. Petitioner's *Apprendi* Claim

Before reaching Petitioner's second habeas claim (his excessive sentence claim), this Court will address Petitioner's third claim (his *Apprendi* claim), as Petitioner's second claim logically turns on the *Apprendi* analysis. Petitioner's *Apprendi* claim challenges the constitutionality of the New York persistent violent felony offender statute, N.Y. Penal Law § 70.08, which requires a sentencing court to enhance a criminal defendant's sentence if the defendant stands convicted of a violent felony offense, as defined in Section 70.02(1), and the sentencing court finds that the defendant has "two or more predicate violent felony convictions." *See id*. § 70.08. To qualify as a predicate violent felony conviction, the offense must be listed in Section 70.02(1), and the sentence for the prior conviction must have been imposed within 10 years of the date of the commission of the violent felony offense for which the defendant is to be sentenced. *Id*. § 70.04(1)(b)(i), (iv). This 10-year period, however, is tolled during periods of time in which the defendant was incarcerated. *Id*. § 70.04(1)(b)(iv), (v). Petitioner here contends that, as the statute requires a judge to make findings rather than a jury, his sentence was unconstitutional under the Supreme Court's decision in *Apprendi*, 530 U.S. 466.

As Petitioner raised his *Apprendi* claim in federal terms before both the Appellate Division and the Court of Appeals (*see* Steward Decl. Ex. A, at 22, 26-36; *id*. Ex. D), this claim has been properly exhausted, *see Daye*, 696 F.2d at 194. Further, the Appellate Division rejected this claim on the merits, *Cruz*, 829 N.Y.S.2d at 487, and this Court must therefore accord deference to that decision, under AEDPA, 28 U.S.C. § 2254(d).

In *Apprendi*, the Supreme Court held that, "other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[7] 530 U.S. at 490. The defendant in *Apprendi* was convicted of, and sentenced on, various firearms and explosives charges, but he received an extended sentence under New Jersey's separate hate crime statute. *Id*. at 469-70. Because the factual question of whether the crimes at issue were "hate crimes" had been decided by the court, rather than by a jury on proof beyond a reasonable doubt, and because the court's determination of this question resulted in an enhancement of the defendant's sentence beyond the statutory maximum for the crimes, the Court reversed the conviction. *Id.* at 497.

Yet, as noted above, *Apprendi* explicitly limited its holding to sentence enhancements based on facts "other than the fact of a prior conviction," *see id.* at 489-90, and the Supreme Court recently reaffirmed this principle in *Oregon v. Ice*, 129 S. Ct. 711, 714 (2009). Thus, a state may properly rely on a defendant's prior convictions to extend a sentence beyond the

---

[7] The prior conviction exception was first articulated in *Almendarez-Torres*, 523 U.S. 224, the case on which the Appellate Division relied in denying Petitioner's appeal. As noted above, *Apprendi* expressly excluded the fact of a prior conviction from those issues that must be tried to a jury and proved beyond a reasonable doubt, and it thus left intact the *Almendarez-Torres* rule. *See Apprendi*, 530 U.S. at 489-90; *see also United States v. Estrada*, 428 F.3d 387, 390 (2d Cir. 2005).

15

prescribed statutory maximum, and the factual question of whether the defendant has previously been convicted need *not* be submitted to a jury. *Id.*; *see also Brown v. Greiner*, 409 F.3d 523, 534 (2d Cir. 2005) (finding, under AEDPA, that it was not unreasonable for the state court to have concluded that the "judicial finding of at least two predicate felony convictions comported with the dictates of *Apprendi*," given that a determination of prior felony convictions "clearly falls within *Apprendi*'s 'fact of a prior conviction exception'").

Based on facts that Petitioner admitted in open court (*see* Tr., at 225-26), the sentencing court found that Petitioner had two "predicate violent felony convictions." (*see* Sentencing Tr., at 44; *see also* N.Y. Penal Law §§ 70.02, 70.04, 70.08).[8] Therefore, as the offense on which Petitioner stood to be sentenced also qualified as a violent felony offense, *see id.* § 70.02(1)(b), the court sentenced Petitioner to an enhanced sentence, *see id.* § 70.08. Under *Apprendi,* as interpreted in this circuit, these findings by the trial court were permissible judicial acts, and the enhanced sentence imposed on Petitioner did not violate his constitutional rights. *See Greiner*, 409 F.3d at 534; *see also Nash v. Ercole*, No. 08 Civ. 5293 (DLC), 2009 U.S. Dist. LEXIS 84693, at *5 (S.D.N.Y. Sept. 1, 2009) (denying habeas relief on ground that trial court's application of New York's persistent violent felony offender statute did not violate petitioner's constitutional rights because use of prior convictions to enhance sentence comported with

---

[8] This finding was proper under state law. Petitioner's prior convictions – robbery in the first degree and attempted robbery in the second degree – both qualify as violent felony offenses under New York law. *See* N.Y. Penal Law §§ 70.02, 70.04, 70.08. Further, although Petitioner was convicted of these crimes in 1987 and 1992, respectively, Petitioner was incarcerated for more than seven years during the time period between his 1987 conviction and the date that he robbed Rahman's store. Given the tolling provision in Section 70.04(1)(b)(iv) and (v), these convictions both constitute predicate violent felony convictions under the statute. *See id.* § 70.04(b).

*Apprendi*). The fact that the trial court necessarily conducted a tolling analysis in making its sentencing determination does not dictate a contrary result. *See United States v. Santiago*, 268 F.3d 151, 156 (2d Cir. 2001) (explaining that the prior conviction exception in *Apprendi* includes within its scope the "who, what, when, and where" of a prior conviction); *see also Washington v. Graham*, No. Civ. 07-1706 (BMC) (LB), 2007 U.S. Dist. LEXIS 79598, at *11-16 (E.D.N.Y. Oct. 24, 2007) (denying habeas relief and rejecting Petitioner's argument that trial court's tolling calculations under persistent violent felony offender statute violated *Apprendi*), *aff'd*, No. 07-5023-pr, 2009 U.S. App. LEXIS 26733 (2d Cir. Dec. 9, 2009) (unpublished).

For these reasons, the Court cannot conclude that the Appellate Division's rejection of Petitioner's *Apprendi* claim was contrary to, or an unreasonable application of, federal law, *see* 28 U.S.C. § 2254(d); *see also Musladin*, 549 U.S. at 76, and Petitioner's *Apprendi* claim should be dismissed.

### C. Excessive Sentence

Petitioner also asserts that his sentence was excessive, given the weakness in the prosecution's evidence and the fact that Petitioner, in committing the underlying crime, did not use a weapon and did not physically injure anyone. Liberally construed, this claim may be read to challenge Petitioner's sentence as constituting cruel and unusual punishment under the Eighth Amendment. Yet an excessive sentence claim is generally not cognizable on habeas review where the sentence imposed comports with state law. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citation omitted); *see also Castro v. Sullivan* 662 F. Supp. 745, 753 (S.D.N.Y. 1987) (when a sentence is within the range prescribed by law, a "claim of

excessive punishment does not present a constitutional question necessary for habeas corpus reversal").

Petitioner's sentence here comported with New York law. As noted above, Petitioner was convicted of robbery in the second degree, in violation of New York Penal Law §160.10, which is a class C violent felony under New York law. *See* New York Penal Law § 70.02(1)(b). The statutorily prescribed sentence for such a felony is ordinary three-and-one-half to fifteen years' imprisonment. *Id*. § 70.02(3)(b). As discussed above, however, the trial court was required, by statute, to sentence Petitioner to a longer term because robbery in the second degree is a violent felony offense, *see id*. § 70.02(1)(b), and Petitioner had two predicate violent felony convictions, as defined by state law (*see* Tr., at 225-26; *see also* N.Y. Penal Law §§ 70.02, 70.04, 70.08). Under the circumstances, the statutory minimum sentence increased to 16 to 25 years and the court was required to impose an indeterminate sentence, up to a maximum term of life imprisonment. *See id*. § 70.08(2), (3)(b). The sentence imposed by the state court here, 18 years to life, was thus within the prescribed statutory range.

As Petitioner's sentence complied with state law, his excessive sentence claim can only be cognizable on federal habeas review to the extent it is based on an allegation that the statute under which he was sentenced was itself unconstitutional. *See Rincon v. Warden*, No. 08 Civ. 3776 (JSR)(KNF), 2009 U.S. Dist. LEXIS 32582, at *20 (S.D.N.Y. Apr. 10, 2009) (citing *United States v. Dawson*, 400 F.2d 194, 200 (2d Cir. 1968)). Petitioner's only allegation in this regard, however, relates to *Apprendi*, which, as discussed above, does not render his sentence unconstitutional.

Accordingly, I recommend that Petitioner's excessive sentence claim be dismissed.

# CONCLUSION

For the foregoing reasons, I recommend that the Petition be DISMISSED in its entirety. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell, United States Courthouse, 500 Pearl Street, Room 1950, New York, New York, 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Holwell. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983). If Petitioner does not have access to cases cited herein that are reported on LEXIS, he should request copies from Respondent's

counsel. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2009) (noting that the Court may ask opposing counsel to provide, to a *pro se* litigant, copies of decisions that are available only electronically).

Dated: New York, New York
January 20, 2010

Respectfully submitted,

_____
DEBRA FREEMAN
United States Magistrate Judge

Copies to:

The Honorable Richard J. Holwell, U.S.D.J.

Mr. Pedro Cruz
05-A-2229
Eastern NY Correctional Facility
PO Box 338
Napanoch, NY 12458

Priscilla Steward, Esq.
Assistant Attorney General
Fedeal Habeas Corpus Section
120 Broadway
New York, NY 10271